UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY E. MORGAN and
REBECCA RYANE MORGAN,

        Plaintiffs,                              Case No. 1:09-cv-646

v.                                                          Hon. Robert J. Jonker

PETER A. WALLIN, Sheriff of Emmet
County; BRENDA K FORD, Emmet County
Jail Administrator; DEPUTIES JOHN DOE
I-III; Jointly and Severally,

        Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT**

This action was initiated by a complaint filed July 14, 2009, by Anthony and Rebecca Morgan, *in pro per,* naming the Sheriff of Emmet County and the Emmet County Jail Administrator as defendants, along with three unknown deputy sheriffs. The named defendants filed an answer to the complaint on November 18, 2009.

On December 18, 2010, plaintiff Anthony Morgan filed a motion for leave to file an amended complaint (docket no. 22). Defendants filed a response in opposition to the motion to amend on April 5, 2010. The only difference between the original complaint and the proposed amended one is the addition of the names of four additional defendants and the elimination of Rebecca Morgan and the Count III loss of consortium claim from the complaint. The motion is defective in several regards, and will be **DENIED** without prejudice.

1

First, the motion is not accompanied by a brief, as required by local court rule. *See*, W.D. Mich. LCivR 7.1(a). This is more than a matter of form, since a brief might have helped the court address two more serious defects discussed below.

Second, the original and the proposed amended complaint each name one of the defendants, Peter A. Wallin, Sheriff of Emmet County Michigan, in both "his personal and official capacities." *See* Proposed First Amended Complaint, ¶ 2. However, the same day he filed his proposed amended complaint, plaintiff Morgan also filed a response to a motion by the defendants for judgment on the pleadings, in which he states that "defendant Wallin may be dismissed in his official capacity." Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings, at ¶ 10 (docket no. 21). This is simply inconsistent with the proposed first amended complaint and leaves the court at a loss to know whether plaintiff is bringing this action against Sheriff Wallin in his official capacity or not.

Third, the most striking defect in the proposed first amended complaint, and the one that precludes it from being filed at this time, is the fact that the amended complaint is signed only by plaintiff Anthony E. Morgan and not by his wife, plaintiff Rebecca Ryane Morgan. Both signed the original complaint. Moreover, the proposed amended complaint deletes any reference to Rebecca Morgan as a party plaintiff, including her loss of consortium claim in Count III of the original complaint, and thereby removes any claim she may have against defendants. A plaintiff, of course, may drop a claim or a lawsuit, but here both plaintiffs are proceeding *in pro per* and there is no indication Anthony Morgan is acting with Rebecca Morgan's consent, or on her behalf. Rebecca Morgan has signed none of the papers that would delete her claims. Absent some indication by Rebecca Morgan that she wishes to withdraw from this action, the court cannot simply

assume she concurs, nor can the court allow two complaints to be filed in the same action which are contradictory to each other.

For all of these reasons, plaintiff Anthony Morgan's motion for leave to file an amended complaint (docket no. 22) is **DENIED** without prejudice.

**IT IS SO ORDERED.**


Dated:  June 22, 2010 　　　　　　　　　　　　　/s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　　　　　HUGH W. BRENNEMAN, JR.
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**Defendants' Motion for Judgment on the Pleadings**

Defendants Wallin and Ford have filed a motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.Proc.(docket no. 18).

A motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. *See, Sensations, Inc. v. City of Grand Rapids,* 526 F.3d. 291, 295 (6th Cir. 2008). The court does not resolve contested facts. *See, Aponte-Torres v. University of Puerto Rico,* 445 Fed.3d 50, 54 (1st Cir. 2006). Rather, the court accepts all well-pleaded material allegations on the non-moving party as true, and views all facts and inferences in a light which is most favorable to the complainant. *See, Poehl v. Countrywide Home Loans, Inc.,* 528 F.3d 1093, 1096 (8th Cir. 2008). And since the motion is normally brought at the very early stages of litigation, the courts will construe the pleadings liberally, *see, Brittan Communications Intern Corp. v. Southwestern Bell Telephone Co.,* 313 F.3d 899, 904 (5th Cir. 2002), *cert. denied* 538 U.S. 1034 (2003), and where federal civil rights claims are concerned, at least one court has characterized the pleading requirements as "very lenient, even *de minimis*." *See, Deravin v. Kerik,* 335 F.3d 195, 200 (2nd Cir. 2003). Moreover, the court is mindful of the admonition that pleadings filed *in pro per* are to be liberally construed. *See, Haines v. Kerner,* 404 U.S. 519 (1972); *Kent v. Johnson,* 821 F.2d 1220, 1223-24 (6th Cir. 1987). As defendants acknowledge in their motion, all well pleaded material allegations of the complaint must be taken as true, and the plaintiff enjoys the benefits of all inferences that plausibly can be drawn from those allegations. The defendants' motion should be granted only when it "appears beyond doubt that, under any reasonably reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Plaintiff Anthony Morgan brings two Eighth Amendment claims. In the first, he alleges the defendants were deliberately indifferent to a substantial risk of serious harm to him when they permitted another inmate to beat him. In the second, he alleges the defendants were deliberately indifferent to his serious medical needs arising from the beating. A simple recitation of the allegations, and the inferences that may reasonably be drawn from them, severely undercuts defendants' contention that the plaintiff will be unable to prove any set of facts which would justify relief against the sheriff and the jail administrator.

Briefly stated, the facts as set forth in the complaint are as follows: plaintiff is a black male married to a white female. His wife's sister was the girlfriend of a white racist, identified as Joel Dufresne, who went so far as to kidnap his own son (a child he had with the sister) because "he was not going to have any single 'niggers' in his family." Complaint at ¶ 13. Joel Defresne was arrested and detained at the Emmet County Jail because of the alleged kidnaping, and because he committed a criminal sexual conduct offense in the first degree against his girlfriend.

Joel Defresne is identified as a National Alliance preacher and Rahowa member who subscribes to the brotherhood of racial holy war, has a swastika tattooed on his abdomen, and the words "White Pride" tattooed on his bicep, with a Celtic cross tattooed on his left hand.

On July 9, 2006, plaintiff was arrested on assault charges and placed at the Emmet County Jail. The complaint states that "the Michigan State Police detective working the Defresne case requested that the Emmet County Sheriff's Department keep Defresne and plaintiff separated. . . [because] Joel Defresne had committed a crime of violence to avoid having "niggers" in his

family, to-wit, Plaintiff . . . [and] and Defendants knew of Joel Defresne racial animist in general and against plaintiff in particular." Complaint at ¶¶ 16, 40, and 41.

Defresne had been arrested in early 2006 and in September of that year began serving a 50 to 75-year sentence at the Ionia Maximum Correctional Facility for eight criminal sexual conduct convictions. He was placed a security level V. Although Defresne did not begin serving his sentences until a couple of months after the incident giving rise to this lawsuit, it may reasonably be inferred that the sheriff and the jail administrator knew they had a violent racist in their facility.

At one point prior to the incident in this case, Defresne had been ejected from church services at the Emmet County Jail for being disruptive.

On July 16, 2006, a deputy sheriff encouraged Defresne to attend religious services. Another deputy sheriff allowed Defresne to roam freely in plaintiff's proximity, even though plaintiff was the only black American to attend the church services.

At the conclusion of the service, while plaintiff was sitting and waiting to be dismissed, Defresne blindsided him by punching him several times in the face.

As a result of the attack, for which no deputies offered plaintiff any first aid, he bled from his nose and mouth and slipped in and out of consciousness, and then had a seizure. Thereafter he was transported by ambulance to a Petoskey hospital, and during this trip had two additional seizures. Plaintiff had a fourth seizure in the hospital emergency room, where plaintiff's lips were swollen, the inside of his mouth was severely cut, and he lost a tooth. Further details of plaintiff's injuries are discussed below.

In order to discuss liability under the Eighth Amendment for a prison official's failure to protect, an inmate must demonstrate that the official was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). To demonstrate deliberate indifference, the inmate must present evidence from which a trier of fact could conclude that the official was subjectively aware of the risk and disregarded it by failing to take reasonable measures to abate it. *Id.* at 829. The biggest and only city in Emmet County being Petoskey, the court may reasonably assume that the Emmet County Jail is not a particularly large facility and that its sheriff and its jail administrator would be aware if they had a violent prisoner and a prisoner who was an avowed racist for the better part of a year. It would also be reasonable to conclude that in a facility of this size, the persons responsible for running the jail would have been aware of the warning by the Michigan State Police to their jail of the necessity of keeping Defresne separated from plaintiff because of Defresne's "racial, personal and familial antipathy for plaintiff because of the "National Alliance preacher's" white supremist views. In fact, this warning came from the Michigan State Police detective working the Defresne case. Defendants' argument that there are no facts alleged in the complaint to show that either the sheriff or his jail administrator "had knowledge of any facts that Defresne and Morgan should be kept separated" only suggests that they did not know what was going on in their own jail, if the allegations of the complaint are to be believed. In any event, this would be a material fact in dispute.

Furthermore, a finder of fact could conclude that plaintiff's placement in proximity with a high security inmate who hated blacks generally and plaintiff in particular, made such placement a substantial risk to plaintiff's safety, a fact of which the person running the jail and the sheriff should have reasonably been aware. "[A]wareness can be demonstrated through 'inference from circumstantial evidence,' and a prison official cannot 'escape liability'. . . by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the

5

[plaintiff] was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer* at 842-43; *Greene v. Bowles,* 361 F.3d 290, 294 (6th Cir. 2004). In short, on the face of this complaint it appears that Defresne was a violent (based on the charges pending against him) racist who hated blacks generally (based on his affiliation and tattoos) and plaintiff in particular (based on the fact he kidnapped his own child because the mother's child was plaintiff's sister-in-law and Defresne was "not going to have any 'n - - - - - -' in his family"), and that the defendants were specifically told about these facts by none other than a Michigan State Police officer involved in the Defresne case. Defendant's council can maintain that his clients were ignorant of these facts, and the obvious inferences to be drawn from them, but this only creates questions of fact, and at this stage the court must resolve all questions of fact in favor of the non-moving party. [insert paragraph about Defresne being in a highly agitated state - Complaint, ¶ 42.]

Similarly, plaintiff has also alleged that the defendants were deliberately indifferent to his medical needs. Plaintiff states that due to the beating, he suffered swollen lips, tremors, headaches which are triggered by sunlight, falling due to loss of balance, loss of a tooth, poor short term memory, and left side weakness. Notwithstanding these conditions, plaintiff states he was discharged only one day after the attack, after "Emmet County Sheriff Deputies informed hospital officials that plaintiff's hospital stay was causing havoc on the jail's schedule because two deputies had to guard the plaintiff's room at all times. Complaint at ¶¶ 24 and 25. It could be reasonably inferred from these facts that the jail administrator, defendant Ford, precipitated the discharge because of her need for deputies.

Upon plaintiff's discharge, the jail stopped administering prescription medication for pain which he had been receiving while he was hospitalized, and seized his discharge papers containing instructions for his care, and did not return them. Plaintiff complained on a daily basis that the aspirin and Tylenol he was furnished were not relieving his pain and that he wanted to return to the hospital to see a doctor. Plaintiff, however, never saw either the jail doctor or a doctor at the hospital (the severity of his pain is underscored by the fact that two weeks after he was released from jail later that month, he passed out due to severe headache pain and had to be taken to the hospital to be given a shot of painkillers to relieve his headache.

On these facts, it might reasonably be argued that notwithstanding his medical injuries, plaintiff was prematurely released from the hospital for the convenience of the deputies' schedule and despite the need for further treatment. Further, upon returning plaintiff to the jail, defendant deprived him of the prescription medication he had been receiving while in the hospital and the instructions plaintiff needed for his treatment. Despite the unnecessary pain plaintiff suffered for a 10-day period, defendants chose to do nothing about it. This caused plaintiff to needlessly suffer extreme pain. These facts are sufficient to support a liberally construed allegation by an *in pro per* plaintiff that the defendants were subjectively aware of his pain (since he told them every day) and not only failed to take reasonable steps to abate it, but deliberately took steps which had the affect of making it more severe (removing plaintiff from the hospital prematurely for non-medical reasons and failing to continue him on the prescription medications he had been receiving while at the hospital). These are the allegations of the complaint and they state a claim; to the extent defendants refute them, they merely raise material issues of fact.

For the reasons stated, I respectfully recommend the defendants' motion for judgment on the pleadings (docket no. 18) be **DENIED.**

Dated: _____            _____
                                  Hugh W. Brenneman, Jr.
                                  U.S. Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).